IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SARA B.,[1]

    Plaintiff,

v.

**COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,**

    Defendant.

**Civ. No. 3:20-cv-01051-MC**

**OPINION AND ORDER**

**MCSHANE, Judge**:

    Plaintiff Sara B. seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). Plaintiff alleges that the Administrative Law Judge ("ALJ") erred by (1) improperly rejecting Plaintiff's subjective symptom testimony; (2) improperly assessing the opinion of provider Clifford Coleman, MD; and (3) misstating Plaintiff's potential jobs during step five. Pl.'s Br. 5–14, ECF No. 24. Because there is substantial evidence in the record to support the ALJ's findings and any errors are harmless, the Commissioner's decision is AFFIRMED.

## PROCEDURAL AND FACTUAL BACKGROUND

    Plaintiff applied for DIB on November 27, 2017 alleging disability since June 15, 2003. Tr. 230. Her application was denied on April 25, 2018 and upon reconsideration on August 17,

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case and any immediate family members of that party.

1 – OPINION AND ORDER

2018. Tr. 164, 170. Plaintiff additionally applied for SSI on January 16, 2019. Tr. 232. Before receiving a response, Plaintiff was granted an ALJ hearing to discuss both claims before the Honorable Elizabeth Watson on July 19, 2019. Tr. 107, 173, 99. ALJ Watson issued a written denial on September 5, 2019, finding Plaintiff not disabled. Tr. 77–94. The Appeals Council denied Plaintiff's request for review on May 20, 2020, rendering the ALJ's decision final. Tr. 1, 224. Plaintiff now seeks judicial review of the ALJ's decision. Pl.'s Br. 2.

Plaintiff is a 42-year-old woman with two years of college experience and no past relevant work. Tr. 103–5. She was 24 years old at the time of her alleged disability onset, when she was rear-ended at a stoplight. Tr. 105–6. She experienced neck, back, and face pain following the accident and additional chronic ailments have since manifested. Tr. 160, 360. She alleges disability from lumbar spine degenerative disc disease, spinal stenosis, hip bursitis, fibromyalgia, chronic fatigue, celiac disease, asthma, obstructive sleep apnea, migraines, diabetes, depression, and anxiety. Pl.'s Br. 2.

## **STANDARD OF REVIEW**

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (reaffirming the substantial evidence standard in social security cases). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the

evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). The burden of proof rests on the claimant for steps one through four, and on the Commissioner for step five. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner's burden is to demonstrate that the claimant can make an adjustment to other work existing in significant numbers in the national economy after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is considered disabled. *Id.*

### I. Subjective Symptom Testimony

Plaintiff argues that the ALJ improperly rejected Plaintiff's subjective symptom testimony by failing to provide a clear and convincing reason. Pl.'s Br. 5.

An ALJ must consider a claimant's symptom testimony, including statements regarding pain and workplace limitations. *See* 20 CFR §§ 404.1529(a), 416.929(a) (2017). Where there is objective medical evidence in the record of an underlying impairment that could reasonably be expected to produce the pain or symptoms alleged and there is no affirmative evidence of

malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of his symptoms. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

The ALJ "may consider a range of factors in assessing credibility." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) [W]hether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter,* 504 F.3d at 1040. It is proper for the ALJ to consider the objective medical evidence in making a credibility determination. 20 C.F.R. §§ 404.1529(c)(2); 416.929(c)(2). However, an ALJ may not make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). The Ninth Circuit has upheld negative credibility findings, however, when the claimant's statements at the hearing "do not comport with objective evidence in her medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). If finding a lack of credibility, the ALJ is "required to point to specific facts in the record" to support that finding. *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 201) (citing *Vazquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2009)).

Here, the ALJ found that Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms was inconsistent with the medical evidence on the record. Tr. 90. The ALJ offered three reasons for such a finding: (1) the objective evidence suggests a level of functioning greater than what Plaintiff asserts, (2) the medical record reveals only conservative treatments, and (3) the testimony shows inconsistencies between Plaintiff's daily activities and alleged functioning level. Tr. 90–91. Despite this, Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's testimony. Pl.'s Br. 7. Worth noting, the Court finds that the ALJ did not "reject" Plaintiff's testimony regarding the severity of her symptoms, but rather was not persuaded by the extent to which Plaintiff alleged them. And in that regard, the ALJ has met her burden of providing clear and convincing reasons.

First, the ALJ found that the objective evidence suggests a level of functioning greater than what Plaintiff asserts. Tr. 90. To support this, the ALJ referenced physical examinations revealing that Plaintiff "could perform work at less than the full range of lightwork." Tr. 90. Plaintiff "regularly exhibited normal gait and station," as well as "normal muscle tone and coordination." Tr. 90, 323, 327, 396, 503, 562, 537, 559–60, 605, 1024. Plaintiff's extremities were "well-perfused with full range of motion" and regularly without "edema or deformities." Tr. 90, 326–27, 377, 396, 503, 526, 537, 559–60, 1005, 1020–21, 1024. Plaintiff regularly appeared "in no acute distress." Tr. 90, 377, 396, 503, 526, 537, 559-60, 1024, 1029, 1256, 1273. Psychiatric examinations consistently revealed "good eye contact, normal speech, thought without delusion, goal directed logic, adequate insight and judgment, and affect within normal limits." Tr. 90, 323, 326-27, 377, 396-97, 503, 560, 605, 625, 1005, 1020–21, 1024, 1029, 1256, 1321, 1398, 1333.

5 – OPINION AND ORDER

Second, the ALJ found that the medical record reveals only conservative treatments for Plaintiff's alleged impairments. Tr. 90. Here, the Court is less persuaded. The ALJ merely states that, in light of Plaintiff's claimed symptoms, "it is reasonable to expect evidence of treatment" and that the "lack of progressive treatment" undermines her claims. Tr. 90. However, the ALJ fails to identify which treatments specifically did not meet the expected level of progressiveness. Surely, a medical record that spans seventeen years and contains wide-ranging, intrusive treatments cannot logically be assumed "conservative" without further explanation of which procedures specifically were too mild. Regardless, this error is harmless because valid reasons for discounting the testimony remain.

The ALJ also noted a significant history of noncompliance, leading her to conclude that it likely "exacerbated [Plaintiff's] condition." Tr. 91. In July 2004, Plaintiff prematurely terminated her relationship with the pain clinic and failed to return as advised for months. Tr. 348, 457, 474, 483. Upon seeking narcotics from an emergency room, Plaintiff was repeatedly denied prescriptions due to medical reports that indicated "medications were not being taken as prescribed" and that Plaintiff must "not be given any further narcotics in the emergency room." Tr. 582, 618. In 2008, a doctor attributed Plaintiff's symptoms to narcotic dependence withdrawal. Tr. 1500. Her primary care provider also recorded a violation of their pain contract, leading to Plaintiff's mother controlling her pain medications. Tr. 1050, 1320. The regulations provide that "if the individual fails to follow prescribed treatment that might improve symptoms, [the ALJ] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." SSR 16-3P, 2017 WL 5180304, at *9 (Oct. 2, 2017); *see* 20 C.F.R. §§ 404.1529(c)(3)(iv)–(vi), 416.929(c)(3)(iv)–(vi). Plaintiff argues that noncompliance cannot undermine her testimony because the record reflects drug dependence, not

lack of pain caused the noncompliance. But the ALJ did not find that Plaintiff fabricated symptoms of pain. Instead, the ALJ found that the intensity of her symptom testimony is undermined by the fact that Plaintiff chose to avoid clinics and misuse narcotics, exacerbating her condition.

Finally, the ALJ found that the testimony shows inconsistencies between Plaintiff's daily activities and alleged functioning level. Tr. 91. Plaintiff claimed that she struggled to walk or bend and could not drive. Tr. 115. She also alleged that "a couple times a week" she was unable to get out of bed for any significant period. Tr. 117. However, as the ALJ points out, the record reveals occasions wherein Plaintiff reported a higher degree of functioning. At various medical visits, Plaintiff reported no issues performing daily activities, indicating a capacity "to care for her personal hygiene independently, prepare meals, and perform household chores." Tr. 91, 322, 1380, 1757. Throughout the alleged disability period, she not only cared for her child, but also cared for her sister's children as a state-employed child caregiver. Tr. 90, 104, 1380, 277, 618, 1004, 1375. She also traveled long-distance to visit family. Tr. 91, 480, 483.  Plaintiff argues that sporadic events do not support a conclusion that she is capable of fulltime employment, but the ALJ's interpretation of these events is equally as plausible. Pl.'s Br. 9.  Further, to the degree that the ALJ did find subjective testimony persuasive, those limitations were accounted for the in the RFC calculus. Tr. 91.

The ALJ gave specific clear and convincing reasons, supported by substantial evidence, to discount Plaintiff's subjective symptom testimony.

## II.     Dr. Clifford Coleman's Testimony

Plaintiff argues that the ALJ improperly assessed Dr. Coleman's testimony by failing to articulate specific and legitimate reasons for finding his medical opinion unpersuasive.

Under the new regulations, an ALJ must evaluate all medical opinions and prior administrative medical findings for persuasiveness. In doing so, an ALJ considers the following factors: (1) supportability, as shown by relevant evidence and explanation; (2) consistency with the record as a whole; (3) the relationship between the source and the claimant; (4) specialization; and (5) other factors, including the source's familiarity with other information in the record. 20 C.F.R. § 416.920c(c). Of these, supportability and consistency are the most important and must be articulated in the ALJ's decision. 20 C.F.R. § 416.920c(b)(2)[2]. Further, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a). Because this application was filed after March 27, 2017, the new regulations apply, and Dr. Coleman's opinion does not require deference.

Here, the ALJ found Dr. Coleman's opinion unpersuasive because it was not supported by or consistent with the medical record. Tr. 91.

In June 2019, Dr. Coleman opined that Plaintiff is restricted to standing and walking less than two hours a day, sitting about six hours a day, and requiring additional postural manipulations, due to her complete inability to perform multiple bodily movements. Tr. 91, 1840–42. He also testified that Plaintiff is entirely incapable of lifting anything and must be absent at least two days per month due to mental and physical pain. Tr. 91, 1840–43.

---

[2] The Ninth Circuit has not issued an opinion regarding the effect of the new 2017 SSA regulations on the "specific and legitimate" standard articulated in Orn. See Robert S. v. Saul, No. 3:19-cv-01773, 2021 U.S. Dist. LEXIS 65231, 2021 WL 1214518, at *4 (D. Or. Mar. 3, 2021), report and recommendation adopted, 2021 U.S. Dist. LEXIS 59635, 2021 WL 1206576 (D. Or. Mar. 29, 2021) (collecting cases). However, other Ninth Circuit district courts have held that under the new SSA regulations the "specific and legitimate" standard is still applicable as the standard against which the Court evaluates the ALJ's reasoning. See John N. v. Comm'r of Soc. Sec. Admin., No. 20-cv-01273, 2022 U.S. Dist. LEXIS 35027, at *17–18 (D. Or. Feb. 28, 2022) (citing Scott D. v. Comm'r of Soc. Sec. Admin., No. C20-5354, 2021 U.S. Dist. LEXIS 4083, at *4 (W.D. Wash. Jan. 8, 2021)).

8 – OPINION AND ORDER

The ALJ found that Dr. Coleman's opinion was unsupported. Dr. Coleman's previous records indicate normal motor functioning, evidenced by his notes that Plaintiff was carrying things in the home, Tr. 1326, and "exercising with low impact cardio," Tr. 1336. In his court-prepared report, Dr. Coleman testified that Plaintiff is "easily overwhelmed" and limited to low stress jobs because anxiety "influence[s] her concentration/focus." Without much explanation as to why, Dr. Coleman opined that Plaintiff would need "to miss multiple days of work per month." Tr. 1842–43. But Dr. Coleman consistently reported normal mental functioning with adequate judgement. *E.g.*, tr. 1321, 1383, 1387, 1398.

The ALJ also found Dr. Coleman's opinion inconsistent with the medical record. She explicitly stated that "the objective evidence found in the medical record supports the assessment that the claimant can perform work at less than the full range of light work." Tr. 91. Contrary to Dr. Coleman's assertion that Plaintiff cannot bend, squat, climb, twist, crouch, balance, or stoop at all, tr. 1842, many records reflected normal gait, station, muscle tone, and coordination. Tr. 90, 323, 327, 396, 503, 562, 537, 559–60, 605, 1024. Dr. Coleman opined Plaintiff was incapable of any lifting, tr. 1842; however, Dr. Wiggins and Dr. Kehrli, state agency medical consultants, opined that Plaintiff was capable of frequently lifting ten pounds and occasionally lifting twenty pounds. Tr. 144, 156. Although Dr. Coleman found that Plaintiff could only concentrate for 50% of the time, tr. 1843, many records revealed "good eye contact, normal speech, thought without delusion, goal directed logic, adequate insight and judgment, and affect within normal limits." Tr. 90, 323, 326-27, 377, 396-97, 503, 560, 605, 625, 1005, 1020–21, 1024, 1029, 1256, 1321, 1398, 1333. Moreover, although state agency psychologists Dr. South and Dr. Nicoloff opined that Plaintiff has "mild" limitations in concentration, they also found no limitation on understanding, remembering, or applying information. Tr. 142, 155.

### III. <u>Step Five's Residual Functioning Capacity</u>

Finally, Plaintiff correctly argues that the ALJ erred in finding that Plaintiff could perform certain jobs that required level three reasoning. The ALJ determined that Plaintiff could perform "light" work with some additional physical and mental limitations. Tr. 81–82. To determine the extent to which those limitations eroded the occupational base, the ALJ posed hypotheticals to the Vocational Expert ("VE"). Tr. 118–22. Under the first hypothetical, the VE offered three "light" jobs. Tr. 119–20. In the third, most restrictive hypothetical, the VE offered three "sedentary" jobs. Tr. 120–21. The ALJ relied on the "sedentary" jobs to form her conclusion of not-disabled. Tr. 93.

However, Plaintiff's limitation "to understanding and carrying out simple instructions," tr. 82, precludes Plaintiff from performing jobs that require level three reasoning. *See Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015). The "sedentary" jobs offered by the VE and published by the ALJ each require level three reasoning. U.S. Dep't of Labor, Dictionary of Occupational Titles, 726.684-034; 249.587-018; 205.367-014 (U.S. Emp. Serv., 4th ed. rev. 1991). Thus, the jobs in the opinion are not jobs the Plaintiff can perform.

To the extent that the ALJ erred here, the error was harmless. After filtering for the correct reasoning level, the transcript still reflects two eligible jobs: office helper and laundry sorter. DOT at 239.567-010, 361.687-014. Thus, the ALJ's incorrect inclusion of sedentary jobs is without prejudice to step five because there are jobs in the economy that the Plaintiff could perform.

//

//

## **CONCLUSION**

For these reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 25th day of March, 2022.

                                                    s/ Michael J. McShane
                                                    Michael J. McShane
                                                    United States District Judge